IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSE JUAREZ,

    Plaintiff,                       No. 2:10-cv-2993 KJM DAD P

    vs.

P. OSTERLIE, et al.,

    Defendants.                FINDINGS & RECOMMENDATIONS

    Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on retaliation claims against three defendants named in plaintiff's first amended complaint. (ECF No. 30.) The matter is before the court on defendants' December 10, 2012 motion for summary judgment. (ECF No. 44.) After being granted two extensions of time to do so, plaintiff filed his opposition to that motion on March 15, 2013. (ECF No. 50.) On March 20, defendants filed a reply. (ECF No. 51.)[1]

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

    Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] Defendants also filed objections to evidence submitted by plaintiff with his opposition (ECF No. 52) and an opposition to plaintiff's statement of undisputed facts (ECF No. 53).

1

Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically store information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . ., is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the

dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

With their motion for summary judgment, defendants served on plaintiff notice of the requirements for opposing such a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure (ECF No. 45). See Woods v. Carey, 684 F.3d 934, 940-41 (9th Cir. 2012); see also

Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc) and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

ANALYSIS

I. Facts[2]

At all times relevant to this action, plaintiff was an inmate incarcerated at Mule Creek State Prison (Mule Creek) and defendants were employees of the California Department of Corrections and Rehabilitation (CDCR) working at Mule Creek. At all relevant times, defendant Osterlie was an Industrial Supervisor in the Meat Plan at Mule Creek, defendant Yarborough was the Superintendent II of the Meat Plant at Mule Creek, and defendant Scott was the Prison Industries Authority (PIA) Manager at Mule Creek. (See Defs.' Separate Statement of Undisputed Facts in Supp. of Mot. for Summ. J. filed Dec. 10, 2012 (SSUF) (ECF No. 44-1) at ¶¶ 1, 14, 23 and evidence cited therein.) In January 2010, plaintiff worked as an inmate worker in the Meat Plant. (See id. ¶¶ 7-8 and evidence cited therein.)

One day in mid-January 2010, defendant Osterlie took a link of sausage and placed it under his smock near his genital area. (Id. at ¶ 3 and evidence cited therein.) Defendant Osterlie avers that he was "joking around with a group of inmates" and that another inmate drew plaintiff's attention to Osterlie by yelling "'Juarez, check this out.'" (Decl. of Osterlie in Supp. of Mot. for Summ. J. filed Dec. 10, 2102 (ECF No. 44-2) at ¶ 4.) Plaintiff avers that defendant Osterlie flashed the sausage at plaintiff "[i]n front of fellow workers, and in a sexual manner." (Pl. Decl. in Supp. of Opp'n filed Mar. 15, 2013 (ECF No. 50) at ¶ 15.)

Defendant Osterlie avers that he heard nothing further about the incident until "late February 2010, when he learned that plaintiff submitted an administrative grievance [Form 602] alleging that he [Osterlie] sexually harassed him [plaintiff]." (Decl. of Osterlie (ECF No. 44-1) at ¶ 4.) Plaintiff avers that he "spoke to Osterlie about this sexual harassment but he

---

[2] Except as specifically noted, the following facts are undisputed.

ignored or took it lightly." (Pl. Decl. (ECF No. 50) at ¶ 17.)  Plaintiff did not tell defendant Osterlie that he was going to file a grievance against him.  (Depo. of Jose Juarez, July 11, 2012, at 37:11-13 (ECF No. 44-2 at 36).)  Plaintiff also avers that defendant Osterlie "denied Plaintiff entrance into work after [plaintiff] stated [his] unhappiness with [Osterlie's] behavior." (Pl. Decl. (ECF No. 50) at ¶ 20.)[3]

On January 15, 2010, plaintiff walked out of his job assignment at the Meat Plan. (Decl. of K. Yarborough in Supp. of Mot. for Summ. J. filed Dec. 10, 2012 (ECF No. 44-2) at ¶ 4.)  On the same day, defendant Yarborough wrote a chrono in which she reported that she had observed plaintiff in the Meat Plant stating "that he was done, that he could not deal with the stress and that he was quitting." (Ex. A to Decl. of Yarborough (ECF No. 44-2) at 14.)  On January 19, 2010, defendant Yarborough issued a CDC-115 Rules Violation Report against plaintiff for failing to report to his prison job assignment.  (Id. at ¶ 8.)  At a prison disciplinary hearing held on February 3, 2010, plaintiff was found guilty of the charges.  (Ex. B to Decl. of Yarborough (ECF No. 44-2) at 17.)  In fact, plaintiff pleaded guilty to the disciplinary charge and stated that he "'walked out.'" (Id.)

On February 21, 2010, plaintiff submitted an inmate appeal (Form 602) complaining about defendant Osterlie's behavior with the sausage and also claiming that he had told inmate Vasquez he was considering filing an inmate grievance, that inmate Vasquez informed defendant Osterlie about plaintiff's comment, and that "Osterlie advised Vasquez to inform the workers that he would take retaliatory measures if [plaintiff] filed a 602." (Ex. A to

---

[3] Plaintiff also avers that he spoke with another inmate, inmate Vasquez, about Osterlie's behavior. (Pl. Decl. (ECF No. 50) at ¶ 19.) Plaintiff declares that "inmate Vasquez went and told Osterlie Plaintiff was going to initiate a complaint against him. Upon hearing this information, Osterlie replied: '[i]f anyone writes a complaint, I'll take all of your privileges away' – '[n]o more cooking on the side, nothing.'" Id. Defendants object to this aspect of plaintiff's declaration on the grounds that it lacks foundation and is inadmissible hearsay. Plaintiff has submitted a declaration from inmate Vasquez in opposition to defendant's motion for summary judgment, but it is neither signed nor dated. (See ECF No. 50 at 30.) Defendants' objections to these averments in plaintiff's declaration are therefore sustained.

Decl. of J. Scott in Supp. of Mot. for Summ. J. filed Dec. 10, 2012 (ECF No. 44-2) at 26.) Plaintiff's inmate grievance was reviewed at the first level of review by defendants Yarborough and Scott, who recommended that plaintiff be placed back on A1A status and noted that "staff has been counseled on professionalism and conduct." (Id. at 27.) Plaintiff pursued the inmate grievance to higher levels of review, complaining that the first level response did not address his complaint of retaliation, and that the behavior complained about was still "prevalent" in the meat plant. (Id.) Beyond noting the relief provided at the first level of review and that plaintiff could "request to be placed back on the waiting list at his next annual committee review" if he "wishes to be hired back into the PIA Meat Plant," no further relief was provided through the administrative review process. (Id. at 24, 29.)

II. Defendants' Motion

Defendants seek summary judgment in their favor on the grounds that: (1) plaintiff left his prison job at the Meat Plant "of his own volition;" (2) that plaintiff did not submit an inmate grievance until five weeks after he left the job, making it impossible to attribute any of defendant Osterlie's conduct to retaliation for plaintiff submitting the inmate grievance; (3) none of the defendants retaliated against plaintiff; (4) there is no constitutional right to file an inmate grievance; (5) liability in this § 1983 action cannot be based on a theory of respondeat superior; and (6) defendants are entitled to qualified immunity. For the reasons set forth herein, the undersigned concludes that the undisputed evidence before the court on summary judgment establishes that none of the defendants in fact retaliated against plaintiff for exercising his First Amendment rights. For that reason, defendants are entitled to summary judgment in their favor.

In the prison context, a First Amendment retaliation claim has "five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Filing

an inmate grievance is "protected conduct" for purposes of a retaliation claim. See Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997). A warning or a threat implying adverse consequences for engaging in protected conduct may be sufficient to constitute "adverse action." Brodheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009).

In his first amended complaint, plaintiff alleges that after he filed his inmate grievance, defendant Osterlie "began" to engage in retaliatory acts including encouraging harassment of plaintiff by other inmate workers, creating a hostile work environment, and initiating the "false write-up firing" of plaintiff. (FAC (ECF No. 30) at 2.) However, the undisputed evidence before the court on summary judgment shows that plaintiff left the Meat Plant on January 15, 2010, announcing that he was quitting, and that he did not return to his job on January 19, 2010. While there is a reasonable inference to be drawn from the evidence submitted on summary judgment that defendant Osterlie's lewd conduct on January 10, 2010 played a role in plaintiff's decision to quit his job, there is no admissible evidence establishing that retaliation for plaintiff's filing of an inmate grievance played any role in plaintiff terminating his work at the Meat Plant in January of 2010.[4] Rather, the evidence establishes that plaintiff did not file his inmate grievance until February 21, 2010, and he admitted at his deposition that he did not tell defendant Osterlie he was going to file the inmate grievance.

There is also no evidence that either defendant Yarborough or defendant Scott engaged in any retaliatory conduct against plaintiff. To the contrary, the undisputed evidence on summary judgment establishes that after plaintiff filed his inmate grievance, defendants Yarborough and Scott interviewed him, recommended that he be restored to privilege group A1A, and informed him that "staff," presumably defendant Osterlie, had been counseled.

---

[4] As noted above, plaintiff asserts that inmate Vasquez told defendant Osterlie plaintiff was going to file a grievance and defendant Osterlie told inmate Vasquez to tell plaintiff that if he did all the inmate workers would lose privileges. However, those statements attributed to inmate Vasquez are inadmissible hearsay and cannot be considered in resolving the pending motion.

1  Finally, plaintiff contends generally that defendants Yarborough and Scott failed
2 to take steps to address ongoing issues concerning intimidation of workers at the Meat Plant,
3 particularly concerning the exercise of their right to file inmate grievances.  However, plaintiff
4 has presented no evidence on summary judgment reflecting his own involvement in any of the
5 subsequent alleged events or ongoing issues at the Meat Plant after he left his job there in
6 January of 2010.
7  For all of the reasons set forth above, this court finds that defendants are entitled
8 to summary judgment in their favor on the merits of plaintiff's retaliation claim.  For that reason,
9 the court need not and will not reach defendants' contention that they are entitled to qualified
10 immunity.  See Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from on other grounds,
11 Pearson v. Callahan, 555 U.S. 223 (2009).

## CONCLUSION

13  In accordance with the above, IT IS HEREBY RECOMMENDED that
14 defendants' December 10, 2012 motion for summary judgment (ECF No. 44) be granted.
15  These findings and recommendations are submitted to the United States District
16 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen
17 days after being served with these findings and recommendations, any party may file written
18 objections with the court and serve a copy on all parties.  Such a document should be captioned
19 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the
20 objections shall be filed and served within fourteen days after service of the objections.  The
21 parties are advised that failure to file objections within the specified time may waive the right to
22 appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
23 DATED: August 20, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:12
juar10cv2993.msj.wpd